UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ASIA BIRD,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>REAL TIME RESOLUTIONS, INC., et al.,<br><br>　　　　　Defendants. | Case No. 5:16-cv-04614-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 7, 13 |

Asia Bird ("Plaintiff") disputes she owes a debt for a home equity line of credit acquired in 2005. She brings this action against the current debt servicer, Real Time Resolutions, Inc. ("Real Time") and Bank of New York Mellon ("BNYM") (collectively, "Defendants") for fraud, misrepresentation, and violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq.*, as well as a quiet title action. Compl., Dkt. No. 1-2.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1332. Presently before the court are Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 7, 8 ("RT MTD"), 13, 13-1 ("BNY MTD"). Plaintiff opposes the motions. See Dkt. Nos. 23 ("Opp. to RT), 28 ("Opp. to BNY"). This court previously dismissed nearly identical allegations brought by Plaintiff in another case, Bird v. Real Time Resolutions, Inc., 183 F. Supp. 3d 1058 (N.D. Cal. 2016) ("Bird I"); Case No. 5:15-cv-04927-EJD, Dkt. No. 23 ("Prior Order"). After carefully considering Plaintiff's new Complaint and the papers submitted by both parties in this matter, the court finds Defendants' motions well-taken for many of the same reasons that warranted dismissal of the previous action. Accordingly, the court adopts the reasoning set forth in its Prior Order and will again grant dismissal for the reasons explained below.

1

Case No.: 5:16-cv-04614-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

## I.   BACKGROUND

On or about August 12, 2005, Plaintiff "obtained an open line of credit" for up to $100,000.00 from Countrywide Home Loans, Inc. ("Countrywide"), a subsidiary of Bank of America.  Compl. ¶ 5; Ex. 1.  The line of credit was governed by a contract entitled "Home Equity Credit Line Agreement and Disclosure Statement" (the "Agreement"), and was secured by real property located in Santa Cruz, California (the "Securing Property").  Id.

Plaintiff alleges she ceased making payments on the line of credit in March, 2009, "due to financial hardship." Id. ¶ 6.  She further alleges that in October 2010, Bank of America "charged off the loan" and transferred servicing of the loan to Real Time.  Id. ¶ 8.  Bank of America then "reported the debt attributed to the loan as charged off with a zero balance."  Id.

Plaintiff states she contacted Real Time on January 26, 2015, and February 12, 2015, to dispute the debt.  Id. ¶¶ 9, 10.  During her second contact, Plaintiff purportedly communicated to Real Time that "the statute of limitations had expired since Bank of America had charged off the debt."  Id. ¶ 10.  Plaintiff states that Real Time responded on February 24, 2015, "by stating that Bank of America's charge off does not affect the statute of limitations and that the statute of limitations had not expired."  Id. ¶ 11.  Plaintiff disagreed with Real Times' position in another communication dated April 7, 2015.  Id. ¶ 12.  She contends "[t]he applicable statute of limitations for collecting upon a debt is 4 years in the State of California."  Id. ¶ 7.

On October 27, 2015, Plaintiff brought suit against Defendant Real Time, alleging fraud, misrepresentation, and violations of the FDCPA, 15 U.S.C. § 1692 *et. seq.*, (the "Prior Lawsuit"). See id. ¶13. The court dismissed Plaintiff's Prior Lawsuit with leave to amend on May 2, 2016. See Bird I, 183 F. Supp. 3d 1058 (15-cv-04927-EJD, Dkt. No. 23).

Also in May 2016, Plaintiff alleges that Von Ryan Reyes, counsel for Real Time, informed her that "Bank of New York Mellon was the original investor of the Loan and that Real Time was collecting from Plaintiff on behalf of Bank of New York."  Compl. ¶ 14.  Thereafter, on May 11, 2016, Plaintiff states that she sent a written request to BNYM for "documents pertaining to the Loan per 12 U.S.C. § 2605," but that BNYM failed to respond to the request.  Id. ¶ 15.  Rather,

Plaintiff states that she spoke with a woman named "Melina, a representative of the Bank of New York in its 'wealth department,'" who informed her "that Bank of New York has no record of being affiliated with the Loan." Id. ¶¶ 15, 20(c); 27(c), 34(c), 40(c). Based on this "new information" and the "discovery of new causes of action," Plaintiff chose to "voluntarily dismiss[]" the Prior Lawsuit, which the court granted on June 6, 2016. Id. ¶¶ 15; 15-cv-04927-EJD, Dkt. Nos. 29, 30.

Approximately two months later, on August 1, 2016, Plaintiff filed the Complaint underlying the present action in the Superior Court of California, Santa Cruz County. Dkt. No. 1-2. Real Time removed the case to federal court pursuant to 28 U.S.C. § 1331 and 15 U.S.C. 1692k(d) on August 12, 2016, and filed its Motion to Dismiss on August 22, 2016. See Dkt. Nos. 1, 7, 8. BNYM filed a Motion to Dismiss on August 31, 2016. Dkt. Nos. 13, 13-1.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). The factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Id. at 556-57. A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

When deciding whether to grant a motion to dismiss, the court must generally accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

Also, the court generally does not consider any material beyond the pleadings for a Rule 12(b)(6) analysis. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Exceptions to this rule include material submitted as part of the complaint or relied upon in the complaint, and material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001).

### B.  Pro Se Pleadings

Where, as here, the pleading at issue is filed by a plaintiff proceeding pro se, it must be construed liberally. Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). In doing so, the court "need not give a plaintiff the benefit of every conceivable doubt" but "is required only to draw every reasonable or warranted factual inference in the plaintiff's favor." McKinney v. De Bord, 507 F.2d 501, 504 (9th Cir. 1974). The court "should use common sense in interpreting the frequently diffuse pleadings of pro se complainants." Id. A pro se complaint should not be dismissed unless the court finds it "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 521 (1972).

## III.  DISCUSSION

### A.  Fraud and Misrepresentation Claims

Plaintiff's first two causes of action are for fraud and misrepresentation, respectively. "A plaintiff alleging fraud under California law must plead facts demonstrating five elements: (1) a misrepresentation; (2) the speaker's knowledge of falsity; (3) the intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damage." Morici v. Hashfast Techs. LLC, No. 5:14-cv-00087-EJD, 2015 WL 906005 (N.D. Cal. Feb. 27, 2015) (citing Lazar v. Super. Ct., 12 Cal. 4th 631, 638 (1996)).

Because it is a species of fraud, the elements necessary to establish a misrepresentation claim are similar: "(1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its

truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff." Manderville v. PCG&S Group, Inc., 146 Cal. App. 4th 1486, 1498 (2007).

Plaintiff's fraud and misrepresentation claims are based on two distinct events Plaintiff alleges resulted in false and misleading statements from Defendants. The first is the February 24th, 2015 statement by Real Time employee Caitlin Coon regarding the statute of limitations. See Compl. ¶¶ 20(a), 27(a), 34(a), 40(a). And second, the May 11, 2016 communications from Mr. Reyes stating that BNYM was "the investor of the Loan," and BNYM's communication to Plaintiff that it was not affiliated with the Loan. See Compl. ¶¶ 14-15, 20(b), 27(b), 34(b), 40(b). Each will be addressed in turn.

### i. Statement Regarding the Statute of Limitations

Plaintiff alleges that Real Time misrepresented the effect of the statute of limitations on its ability to collect the debt from Plaintiff. Specifically, Plaintiff alleges that "Caitlyn [sic] Coon, a research analyst and agent of Real Time, claimed the statute of limitations had not expired on the loan," and that "Real Time's communication alleged that the statute of limitations had not run on the Debt . . . ." Compl. ¶¶ 20(a), 27(a), 34(a), 40(a). This allegation is identical to that alleged, and dismissed, in the Prior Lawsuit. Real Time argues Plaintiff has not stated a claim because the applicable statute of limitations has not actually expired.

As discussed in the court's Prior Order dismissing these claims (15-cv-04927-EJD, Dkt. No. 23) and adopted again here, both parties recognize that the statute of limitations for "[a]n action upon any contract, obligation or liability founded upon an instrument in writing" is four years. Cal. Civ. Proc. Code § 337(1). And generally speaking, "where performance of contractual obligations is severed into intervals, as in installment contracts, the courts have found that an action attacking the performance for any particular interval must be brought within the period of limitations after the particular performance was due." Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1388 (2004).

5
Case No.: 5:16-cv-04614-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

But when the contract contains an acceleration clause, "'the statute does not begin to run on installments not yet due until the creditor, by some affirmative act, manifests his election to declare the entire sum due.'" Garver v. Brace, 47 Cal. App. 4th 995, 1000 (1996) (quoting 3 Witkin, Cal. Procedure, Actions, § 384 p. 413 (3d ed. 1985)); accord Jones v. Wilton, 10 Cal. 2d 493, 500 (1938) (holding that for the breach of a contract with an acceleration clause, "[i]f the creditor fails to act affirmatively to mature the indebtedness, the statute of limitations is not set in motion"); Trigg v. Arnott, 22 Cal. App. 2d 455, 458 (1937) ("It is settled in California that the presence in a promissory note of a positive nonoptional acceleration clause does not have a self-operative effect so that the statute of limitations begins to run immediately upon the happening of a default in a payment which the note specifies shall be made on a designated date."). This is because acceleration clauses "are for the benefit of the creditor" such that the failure to pay an installment when due "cannot be taken advantage of by the debtor to mature the entire indebtedness." Andrews v. Zook, 125 Cal. App. 19, 24 (1932).

Here, the Agreement between the parties designates a "Draw Period" and a "Repayment Period." Compl., Ex. 1 at § 1. During the Draw Period, Plaintiff can request loans "from time to time" up to the credit limit of $100,000.00 but is only obligated to pay the "Minimum Payment Due," which "equals all unpaid finance charges, credit life insurance premiums, and other charges imposed during the billing cycle" along with any past due payments. Id. at §§ 1, 3(E), 3(F), 4. Making only these minimum payments during the Draw Period does not result in a reduction of principal. Id. at § 3(F). The Draw Period is followed by the Repayment Period, which lasts for 180 months. Id. at § 1. During the Repayment Period, the "Minimum Payment Due" is "1/180th of the outstanding principal balance" as of the last day of the Draw Period. Id. at § 3(G).

The Agreement also contains an optional acceleration clause permitting the creditor to declare all sums owed immediately due and payable for various reasons, including for the failure to make a "Minimum Payment Due." Id. at § 12.

Plaintiff alleges she missed a payment in March, 2009, which was during the Draw Period. She does not allege, however, that Countrywide exercised the optional acceleration clause at that

time in order to trigger the statute of limitations for all outstanding amounts. Instead, the Draw Period continued for 120 months from August 12, 2005 - in the absence of an allegation that Countrywide failed to extend it - and principal payments under the Repayment Period did not become due any sooner than August 12, 2015. Thus, according to the plain terms of the Agreement, the loan will not mature for another 180 months from that date, or on August 12, 2030, at which time the § 337(1) four-year limitations period will commence. Consequently, Real Time did not misrepresent the statute of limitations in its communication with Plaintiff.

Under these circumstances, Plaintiff has not plausibly alleged facts to support her position that the statute of limitations began to run when she missed a non-principal payment in 2009. As a result, with respect to her statute of limitations allegations, Plaintiff has not stated claims for fraud or misrepresentation against Real Time. It is not clear from Plaintiff's Complaint whether she also intended to assert these particular claims against Defendant BNYM. If she did so intend, any such claims fail for the same reasons discussed with respect to Real Time, and for the additional reason that Plaintiff does not allege that BNYM or its representatives made any statement regarding the statute of limitations. Accordingly, to the extent that Plaintiff's causes of action are based on alleged misrepresentations related to the limitations period, such claims will be dismissed as to all Defendants.

### ii. Statement Regarding Bank of New York Mellon and Ownership of Plaintiff's Debt

#### a. Real Time's Statement

The second statement Plaintiff contends gives rise to her claims for fraud and misrepresentation is Mr. Reyes' May 11, 2016 communication wherein he allegedly "informed [her] that Bank of New York was the investor of the Loan and that Real Time was collecting from Plaintiff on behalf of Bank of New York." See Compl. ¶¶ 14-15, 20(b), 27(b), 34(b), 40(b). Plaintiff argues that this statement was "false and a misrepresentation because on May 11, 2016, Melia, a representative of the Bank of New York in its 'wealth department,' informed Plaintiff that Bank of New York has no record of being affiliated with the loan." Id. Thus, Plaintiff contends that Mr. Reyes misrepresented BNYM as the owner of her debt.

7

Case No.: 5:16-cv-04614-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

1 Real Time argues that it cannot be held liable for statements of its outside counsel, but even if it could be held liable, it is nevertheless immune from liability for Mr. Reyes' statement under California's litigation privilege. RT MTD at 6. "California's litigation privilege applies to any communication '(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action.'" Graham-Sult v. Clainos, 756 F.3d 724, 741 (9th Cir. 2014) (quoting Mansell v. Otto, 108 Cal. App. 4th 265 (2003)); see Cal. Civ. Code § 47. Courts in California have interpreted the privilege broadly. See, e.g., Steiner v. Eikerling, 181 Cal.App.3d 639 (1986) (holding that the litigation privilege included the act of filing a forged will, as well as the act of preparing the will). As the Ninth Circuit explains, the litigation privilege "immunizes defendants from virtually any tort liability (*including claims for fraud*), with the sole exception of causes of action for malicious prosecution." Id. (quoting Olsen v. Harbison, 191 Cal.App.4th 325 (2010)) (emphasis added). Thus, the privilege functions as a substantive defense that a plaintiff must overcome. Id.

Here, Plaintiff alleges that Mr. Reyes made the purportedly false or misleading statement that BNYM was the owner or investor of her Loan in May of 2016. However, Plaintiff did not dismiss the Prior Lawsuit until June 2016. Thus, the statement was made during a period of time when both parties were actively litigating the issues about which the statement was made. Accordingly, the court need not reach the question of whether Plaintiff adequately plead fraud or misrepresentation, because even assuming Mr. Reyes' statement could be considered false or misleading, both Mr. Reyes and Real Time are immune from liability for this statement pursuant to California's litigation privilege. Cal. Civ. Code § 47.

b. BNYM's Statement

Plaintiff concurrently alleges that BNYM is also liable for fraud and misrepresentation based on the statement by one if its representatives "Melina," who purportedly informed Plaintiff that BNYM had "no record of being affiliated with the Loan. Compl. ¶¶ 14-15, 20(c), 27(c). Plaintiff contends this statement was "false and a misrepresentation" because it was contradicted

8
Case No.: 5:16-cv-04614-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

by Mr. Reyes' statement that BNYM was so-affiliated, discussed above. Id. Plaintiff's allegations fail to state a claim for fraud and misrepresentation against BNYM.

This single allegation against BNYM does not satisfy numerous elements of a cause of action for fraud or misrepresentation. First, the limited information about "Melina in the wealth department" fails to set forth any specific facts to show knowledge of falsity. Plaintiff makes no allegations as to why "Melina" knew or should have known that her statement to Plaintiff was false, much less that "Melina" had the knowledge or authority to speak on behalf of the corporation on this topic. See Tarmann v. State Farm Mutual Auto Ins. Co., 2 Cal. App. 4th 153, 157 (1991). Second, even if Plaintiff could show "Melina's" intent to induce some reliance by Plaintiff, Plaintiff does not plead actual reliance on such an inducement. Plaintiff alleges BNYM made this representation so that Plaintiff "would not pursue legal action against [BNYM]." Compl. ¶¶ 21(c), 28(c). However, as BNYM points out, it appears Plaintiff did not actually rely on the statement because she immediately filed suit against BNYM. BNY MTD at 2, 6. Plaintiff alleges no other form of reliance on BNYM's representation. Finally, Plaintiff fails show damages resulting from any purported reliance on the misrepresentation. The fees incurred from Plaintiff's pursuit of legal action cannot reasonably be considered damages "resulting from" her reliance on a statement intended to prevent her from pursuing such action. See Morici, 2015 WL 906005 Manderville, 146 Cal. App. 4th at 1498. Moreover, by May 2016 when this statement occurred, Plaintiff had not been making payments on the Loan at issue for more than seven years, and was already engaged in the Prior Lawsuit against Real Time. Plaintiff thus fails to identify any distinguishable harm related to or resulting from BNYM's statement.

Plaintiff's allegations are largely conclusory and fail to set forth specific facts in support of her limited claim against BNYM. Accordingly, Plaintiff has failed to adequately state a claim for fraud or misrepresentation and the court finds dismissal is warranted.

**B.   FDCPA Claims**

Plaintiff's third, fourth, and fifth causes of action arise under the FDCPA, which is a statute that seeks "to eliminate abusive debt collection practices by debt collectors, to insure that

those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

As relevant here, the FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he false representation of . . . the character, amount, or legal status of any debt," "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(8), 1692e(10). To state a claim under the FDCPA, a plaintiff must allege facts establishing the following elements: "(1) plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant qualifies as a 'debt collector' under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." Bird I, 183 F. Supp. 3d at 1062 (citing Dang v. CitiMortgage, Inc., 2012 WL 762329 at *10 (N.D. Cal. 2012).

### i. FDCPA One-Year Statute of Limitations

As a preliminary matter, Defendants argue that the one-year statute of limitations period on Plaintiff's FDCPA claims arising from Real Time's purportedly false statements and its failure to report the Loan as "disputed" to credit ratings agencies has now expired. RT MTD at 9. The FDCPA provides that a debtor must bring an action to enforce liability created under the statute "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k. "Under Ninth Circuit precedent, the FDCPA limitations period 'begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" Wilson v. Gordon & Wong Law Grp., P.C., 2013 WL 3242226, at *4 (E.D. Cal. 2013) (quoting Mangum v. Action Collection Serv., Inc., 575 F.3d 935, 940 (9th Cir. 2009)).

Here, Plaintiff alleges that Real Time made the misrepresentations regarding the Loan's

10
Case No.: 5:16-cv-04614-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

statute of limitation period on February 24, 2015.  Compl. ¶ 11.  She also alleges that she sent Real Time a communication on January 26, 2015, disputing the debt owed on the line of credit, but that "[f]or the month of February 2015, Real Time reported the Debt as undisputed to the three major credit bureaus (Experian, Equifax, and Transunion)."  Compl., ¶¶ 44-46.  Given the one-year statute of limitations, Plaintiff was therefore required to assert any FDCPA claims arising from these two events in February 2016.  Plaintiff filed the instant action in state court on August 1, 2016, approximately six months after the one year limitations period expired.

Plaintiff's briefing does not address the statute of limitations issue in connection with her FDCPA claims.  Plaintiff does assert that "[her] claims are not time-barred," but makes this assertion only with respect to her fraud and misrepresentation claims, which Defendants do not challenge on such grounds.  See Opp. to RT at 5-6.  Plaintiff argues that the "statute of limitations began to run when Plaintiff *discovered* the existence of her claims."  Id. at 6 (emphasis in original).  But even taking this assertion at face value, as plead, Plaintiff "discovered" her claims in February 2015 when Real Time allegedly made the false statement to her and reported the Loan as undisputed to credit agencies.  That is, Plaintiff "discovered" her claims at the same time the violations occurred.  Thus, either case, Plaintiff "[knew] or ha[d] reason to know of the injury which is the basis of the action" in February 2015.  See Mangum, 575 F.3d at 940.  Because the present action was filed six months after the one-year limitations period ended, the only remaining question is whether the Prior Lawsuit equitably tolled the statute of limitations on Plaintiff's FDCPA claims in this case.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fairbank v. Underwood, 986 F. Supp. 2d 1222, 1234 (D. Or. 2013) (reviewing FDCPA cases explaining that equitable tolling may be appropriate where "the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.").  The Ninth Circuit instructs that "[e]quitable tolling focuses primarily on *the plaintiff's* excusable

11
Case No.: 5:16-cv-04614-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

ignorance of the limitations period...explain[ing] that the doctrine is not available to avoid the consequences of one's own negligence." Lehman v. United States, 154 F.3d 1010, 1016 (9th Cir. 1998) (emphasis in original). As the Ninth Circuit has reiterated on numerous occasions,

> The equitable tolling doctrine has been applied by the Supreme Court in certain circumstances, but it has been applied sparingly; for example, the Supreme Court has allowed equitable tolling when the statute of limitations was not complied with because of defective pleadings, when a claimant was tricked by an adversary into letting a deadline expire, and when the [agency's written] notice of the statutory period was clearly inadequate. *Courts have been generally unforgiving, however, when a late filing is due to claimant's failure "to exercise due diligence in preserving his legal rights."*

Id. (emphasis in original) (citing Scholar v. Pacific Bell, 963 F.2d 264, 267-68 (9th Cir. 1992).

Absent more, courts have held that a plaintiff's voluntary dismissal of an action does not warrant equitable tolling. See, e.g., Estate of Blue v. Cty. of Los Angeles, 120 F.3d 982, 984-85 (9th Cir. 1997) (finding that the voluntary dismissal of an action precluded application of equitable tolling because it did not satisfy the "good faith and reasonable conduct" standard, and explaining that the plaintiff "took its chances when it voluntarily dismissed its case, and it cannot claim a right to return to federal court four years later because its earlier tactical decision to go to state court turns out to have been a mistake."); Stallcop v. Kaiser Found. Hosps., 820 F.2d 1044, 1049-50 (9th Cir. 1987) (rejecting the plaintiff's argument that the statute of limitations should have been equitably modified because the defendant had not informed her of the applicable statute of limitations, holding that "the opposing party had no duty to inform the plaintiff of the statute of limitations.");

Lehman, 154 F.3d at 1016 (holding that government counsel's failure to explain the statute of limitations and the consequences of dismissal "does not make plaintiffs' ignorance of the limitations period excusable.").

In this case, any argument for equitable tolling is even less compelling than in many of the cases cited above. For example, unlike in Lehman, where there were allegations suggesting the defendant had encouraged the dismissal of the first action in connection with settlement discussions, here Plaintiff's dismissal of Bird I appears to be solely the result of her personal

12

Case No.: 5:16-cv-04614-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

preference and/or strategy. Indeed, when the court dismissed the Prior Lawsuit, Plaintiff was granted leave to amend all of her claims and was given a timeframe within which she was required to file any amended complaint. See Prior Order, Dkt. No. 23. She chose not to. Rather, Plaintiff voluntarily dismissed the Prior Lawsuit, and instead elected to refile this action nearly two months later in state court. See Dkt. Nos. 1-2, 7. There is no evidence that Defendants affirmatively mislead Plaintiff as to the FDCPA's statute of limitations period, concealed information relevant to the limitations period, or otherwise prevented Plaintiff from filing the action at an earlier date. Under these circumstances, application of equitable tolling is not warranted. Accordingly, Plaintiff's FDCPA claims arising from either (1) Real Time's statements about the Loan's statute of limitations, or (2) Real Time's purported failure to report the Loan as "disputed" to credit agencies are time-barred and will be dismissed with prejudice.

  ii.  **Statement Regarding Bank of New York Mellon and Ownership of Plaintiff's Debt**

Plaintiff further alleges that the statements made on May 11, 2016 by counsel for Real Time, Mr. Reyes, and BNYM representative, "Melina," concerning BNYM's ownership and affiliation with the Loan - or lack thereof - also give rise to Plaintiff's third and fourth causes of action under the FDCPA. Compl. ¶¶ 34(b)-(c), 40(b)-(c). While such statements fall within the FDCPA's one-year statute of limitations period, these claims nevertheless fail because Plaintiff does not plead facts showing that either Mr. Reyes or "Melina" are "debt collectors" for the purposes of the FDCPA.

The FDCPA only applies to individuals who can be considered "debt collectors" within the meaning of the Act. The FDCPA defines the term "debt collector" to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The Supreme Court has expressly clarified that a lawyer can be considered a debt collector for the purposes of the FDCPA where the lawyer's conduct and/or business practices meet this general

13
Case No.: 5:16-cv-04614-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

definition.  Heintz v. Jenkins, 514 U.S. 291, 294 (1995).  As the Court explained, "In ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts."  Id. (citing Black's Law Dictionary 263 (6th ed. 1990) ("To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings")).  However, a lawyer whose practice does not regularly involve the collection of debts will not be considered a "debt collector" simply because they represent a debt collector in a different capacity.

Here, Mr. Reyes is an attorney at the law firm Ericksen Arbuthnot, which was retained as defense counsel for Real Time in the lawsuits filed by Plaintiff.  Nowhere in the Complaint does Plaintiff allege that Mr. Reyes himself, or the Ericksen firm, sought to collect on Plaintiff's outstanding debt.  In her Opposition, Plaintiff highlights a supporting exhibit to the Complaint that states "Real Time Resolutions is a debt collector" and "this is an attempt to collect a debt…" in support her position that "Real Time's agents were engaged in debt collection."  Opp. to RT at 7.  However, there is no dispute that *Real Time* is a debt collector; the focus is on Mr. Reyes.  Upon careful review the facts alleged here, and the court finds nothing in the Complaint, the attached exhibits, or the briefing papers to support that Mr. Reyes qualifies as a debt collector under the FDCPA.  Because he is not a debt collector, Mr. Reyes' statement is not governed by the requirements of the FDCPA, which in turn means his statement cannot form the basis for an FDCPA cause of action.  And, because Mr. Reyes is not personally liable for a violation of the FDCPA, Real Time also cannot be held liable.[1]

---

[1] Because this is a sufficient basis upon which to dismiss this claim, the court need not address Real Time's other arguments in favor of dismissal.  However, it merits noting that even if Mr. Reyes could be considered a debt collector, because Mr. Reyes was a lawyer for the firm hired as Real Time's outside legal counsel, he would likely be considered an independent contractor, which means Real Time would not be subject to liability for individual torts committed by Mr. Reyes.  Lynn v. Superior Court, 180 Cal. App. 3d 346, 349 (Ct. App. 1986) ("In our view independent counsel retained to conduct litigation in the courts act in the capacity of independent contractors" and "[a]bsent compelling reasons of public policy… an employer is not liable for the negligence of an independent contractor.") (internal citations omitted).  Plaintiff seeks to distinguish this case, arguing that "Real Time's attorneys did not commit a mere tort…[Mr.

14
Case No.: 5:16-cv-04614-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

The Complaint has even fewer allegations to support FDCPA liability against BNYM. Plaintiff alleges that in May 2016, she spoke with a woman named "Melina, a representative of the Bank of New York in its 'wealth department,'" and "Melina" informed her "that Bank of New York has no record of being affiliated with the Loan." Id. ¶¶ 15, 20(c); 27(c), 34(c), 40(c). This allegation forms the sole basis for Plaintiff's FDCPA claims against BNYM. See id. However, here too, Plaintiff fails to allege facts showing that "Melina" was a debt collector or otherwise attempting to collect a debt. In fact, Plaintiff's only allegation in this regard suggests just the opposite – that "Melina" actually represented to Plaintiff that neither she nor BNYM were involved with Plaintiff's Loan or the collection of any debt associated therewith. As BNYM points out, this "would be contrary to a collection attempt." BNY MTD at 2. Thus, it cannot reasonably be said that this statement was made "in connection with the collection of any debt." 15 U.S.C. § 1692e. Neither

Accordingly, Plaintiff's remaining FDCPA claims based on the allegedly false statements made by Mr. Reyes and "Melina" will also be dismissed.

### C. Quiet Title

Plaintiff's sixth and final claim seeks to quiet title to the property, requesting "a determination of fee simple title with respect to the Subject Property." Compl. ¶¶ 49-58. Plaintiff alleges that Defendants "do not have the legal right to foreclose on the Subject Property, nor collect any debts pursuant to the Loan." Compl. ¶ 55. Defendants move to dismiss this claim on the grounds that Plaintiff has failed to tender the amount owed on her outstanding debt, and because Plaintiff has not satisfied the pleading requirements for quiet title in California. RT MTD at 13; BNY MTD at 7-8. The court agrees with Defendants.

California Code of Civil Procedure section 760.010 provides for an action "to establish title against adverse claims to real or personal property or any interest therein." California Code

---

Reyes] committed an intentional misrepresentation." Opp. to RT at 4. In the interest of clarity, the court notes that intentional misrepresentation is a tort.

of Civil Procedure section 761.020 mandates that a "verified" complaint for a quiet title action to include:

    1. A legal description and street address of the subject real property;

    2. The title of plaintiff as to which determination is sought and the basis of the title;

    3. The adverse claims to the title of the plaintiff against which a determination is sought;

    4. The date as of which the determination is sought; and

    5. A prayer for the determination of the title of the plaintiff against the adverse claims.

Additionally, "a purported quiet title claim is doomed in the absence of tender of amounts owed." Khan v. CitiMortgage, Inc., 975 F. Supp. 2d 1127, 1148 (E.D. Cal. 2013). Indeed, it is well-settled law in California that "[a] borrower may not…quiet title against a secured lender without first paying the outstanding debt on which the mortgage or deed of trust is based." Lueras v. BAC Home Loans Servicing, LP, 221 Cal. App. 4th 49, 86 (2013); see also Miller v. Washington Mut. Bank FA, 776 F. Supp. 2d 1064, 1069 (N.D. Cal. 2011) ("Tender is required to maintain an action to quiet title in California."); Khan, 975 F. Supp. 2d at 1148-49 ("It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured.") (quoting Shimpones v. Stickney, 219 Cal. 637, 649, 28 P.2d 673 (1934)). Thus, a quiet title claim requires the plaintiff asserting the claim to allege that she has made a valid and viable tender of payment of her indebtedness. See Khan, 975 F. Supp. 2d at 1148; Kelley v. Mortgage Elec. Registration Systems, Inc., 642 F.Supp.2d 1048, 1057 (N.D.Cal. 2009); Hamilton v. Bank of Blue Valley, 746 F. Supp. 2d 1160, 1170 (E.D. Cal. 2010). To satisfy this obligation, "[t]he tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." Gaffney v. Downey Savings & Loan Assn., 200 Cal. App. 3d 1154, 1165 (1988). "The rules which govern tenders are strict and are strictly applied." Hamilton, 746 F. Supp. 2d at 1171 (quoting Nguyen v. Calhoun, 105 Cal. App. 4th 428, 439 (2003).

Here, the Complaint lacks a legal description of the property, factual allegations as to the

title Plaintiff contends she is legally entitled to, or allegations of adverse claims to the title. But even more fatal to the viability of this claim, the Complaint fails to allege that Plaintiff has made a valid tender of payment for the amount owed on the Loan. Plaintiff admits that she ceased making payments on the line of credit in March 2009 "due to financial hardship." Compl. ¶ 6. And there appears to be no dispute that Plaintiff failed to make *any* payment on the Loan since that time, much less tendered the entire amount owed on the outstanding debt.

In response, Plaintiff requests leave to amend so that she "may properly allege [her] offer to tender the delinquent amount." Opp. to RT at 8. However, Plaintiff misunderstands her responsibility in this regard. As the cases cited above make clear, for the purposes of a quiet title action, Plaintiff's obligation is to the entire amount of the debt, not just the delinquent amount. Additionally, Plaintiff must do more than simply *allege an offer* of tender; she must have actually tendered the amount owed on her debt "such that it needs only acceptance by the one to whom it is made to complete the transaction." Gaffney, 200 Cal. App. 3d at 1165. At no point in the nearly eight years since she stopped making payments on the Loan does Plaintiff allege any effort to make good on her debt. A change in the pleading language will not alter this reality – significant and proactive future action on Plaintiff's part would be required to cure the deficiency in this claim. Accordingly, the court finds no basis to grant leave to amend here.

## IV.   ORDER

Based on the foregoing, Defendants' motions to dismiss (Dkt. Nos. 7, 13) are GRANTED as to all claims. All claims will be dismissed WITHOUT LEAVE TO AMEND.

Because this action raises the same claims and arises from the same series of facts as the Prior Lawsuit, the court construes this case as Plaintiff's second opportunity to properly plead this action. At this point, the court finds that allowing for further amendment would be futile because Plaintiff has failed to correct the deficiencies in her previous pleadings. See Foman v. Davis, 371 U.S. 178, 182 (1962); Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (holding that leave to amend may be denied for "failure to cure deficiencies by amendments previously allowed"). Plaintiff also did not demonstrate how the defects could be remedied if

17
Case No.: 5:16-cv-04614-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

leave to amend were granted.

Moreover, Plaintiff's actions suggest an absence of good faith further, warranting dismissal without leave to amend. Specifically, Plaintiff's attempt to circumvent this court's previous dismissal of her claims by refiling the action in state court is cause for concern. Plaintiff also benefitted from extending the deadline by which she was required to file an amended complaint, which was set in the court's Prior Order granting leave to amend. Plaintiff's behavior further suggests an attempt to delay or hinder Defendant's ability to take action in connection with her unpaid Loan and the Subject Property, or otherwise coerce Defendants into modifying the Loan she has failed to make payments on for almost eight years. The foregoing supports dismissing this action with prejudice. Foman, 371 U.S. at 182 (identifying valid reasons for dismissal without leave to amend as including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."); see also Herrejon v. Ocwen Loan Servicing, LLC, 980 F. Supp. 2d 1186, 1208 (E.D. Cal. 2013) (explaining that dismissal was justified where the court surmised that the plaintiffs lacked good faith and sought "to exploit the court system" in order to "delay or to vex defendants and property foreclosure.").

The Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: February 17, 2017

_____
EDWARD J. DAVILA
United States District Judge

18
Case No.: 5:16-cv-04614-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS